UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:18-CR-81-JMH-MAS-14 |
| | ) | |
| v. | ) | |
| | ) | |
| VLAD-CALIN NISTOR, | ) | |
| | ) | |
| Defendant. | | |

### REPORT AND RECOMMENDATION

This case is before the Court on Defendant Vlad-Calin Nistor's ("Nistor") Motion to Suppress. [DE 460]. The district judge referred this matter to the undersigned for a Report and Recommendation. The United States responded to the motion [DE 519], Defendant replied [DE 537], and the Court determined that a hearing was unnecessary. Thus, the matter is ripe for decision. For the reasons stated herein, the Court recommends the District Court deny Defendant's Motion to Suppress.

### I. FACTUAL BACKGROUND

This case arises from an investigation into an alleged international online fraud conspiracy dating back to 2014. At issue in this case are seven search warrants of Nistor's various online accounts. The first search warrant ("Warrant 1") was executed on February 19, 2016. The remaining search warrants (respectively, "Warrant 2" through "Warrant 7") were executed later, supported in part by the evidence obtained through Warrant 1. The facts leading to this search warrant, as set forth in the supporting affidavit by Special Agent Mark Coleman ("SA Tremaine") with the United States Secret Service, are as follows: SA Coleman interviewed a target-turned-

confidential informant ("the CI") about his admitted involvement in a bitcoin fraud scheme. The investigation ultimately led SA Coleman to Nistor, an alleged participant in the scheme. The CI explained that the fraud conspiracy operated by finding an American victim to provide funds or gift cards to a money launderer or processor. The funds were ostensibly to purchase a high-dollar item. The item to be purchased was listed on a website such as eBay or Craigslist, but the item did not exist. The processor would exchange the money or gift card into bitcoin and provide a percentage of the profit to fraudsters outside the United States. [DE 460-3 at Page ID # 3146]. According to the CI, one member of the conspiracy repeatedly directed him to send bitcoin to a specific bitcoin address. Law enforcement traced the movement of the bitcoin on the blockchain to the ultimate recipient, Defendant Nistor, a Romanian national. [DE 460-3 at Page # 3182]. Law enforcement then determined that Nistor's Google email address, vladnistor@gmail.com, was used to register his account on Kracken, the bitcoin exchange service he used to complete these bitcoin transactions. [DE 460-3 at Page ID # 3185].

On February 18, 2016, SA Coleman sought and obtained a search warrant for, among other items, "the contents of all emails, chats, or stored communications associated with the [Google] account . . ." and "[a]ll data associated with the use of the Location History and Web History between the dates of December 11, 2015, through December 18, 2015" that could be found in Nistor's Google account in connection with many of Google's services, such as Google Drive, Google Docs, Google Photos, Google Maps Engine, Google Calendar, Google Wallet, Google Chrome, and Web History (among many others). Eventually, utilizing the information obtained from Warrant 1, law enforcement sought and obtained six additional warrants for targeting Nistor's Google account, his Amazon web services account, and domain www.coinflux.com.

Nistor now argues that the evidence obtained from all of these warrants must be suppressed because they lack particularity, the supporting affidavits failed to establish probable cause, and they function as a "general warrant," which is prohibited by the Fourth Amendment. Nistor argues that the subsequent search warrants have these same deficiencies and must be suppressed. Moreover, because Warrants 2 through Warrants 7 depend upon the information obtained from Warrant 1, Nistor contends Warrants 2 through Warrants 7 are "fruit of the poisonous tree" that must be suppressed. *Nardone v. United States*, 308 U.S. 338, 341 (1939).

The United States responded with many arguments countering Nistor's attack on the search warrants; however, its first argument is entirely dispositive of the dispute. Specifically, the United States argues that suppression is not a remedy available to Nistor, because "the Fourth Amendment does not "protect[] a nonresident alien, who has had no previous significant voluntary connection with the United States, from an unreasonable search and seizure of property located in the United States." [De 519 at Page ID # 3837] (*quoting United States v. Alahmedalabdaloklah*, 2017 WL 2839645, *2 (D. Ariz. July 3, 2017)).

For the reasons stated below, the Court agrees with the United States that Nistor is not entitled to the protections of the Fourth Amendment.

## II. ANALYSIS

The question before the Court is straightforward: does the Fourth Amendment apply to Nistor? In *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), the Supreme Court held that the Fourth Amendment protects "the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264-66 (1990). Nistor does not dispute that he is a Romanian national, lives full-time in Romania, and is only present in the United States due to extradition for

3

prosecution in this case. [*See*, *e.g.*, DE 459- at Page ID # 3104]. Thus, it appears that the holding in *Verdugo-Urquidez* precludes Nistor's present motion.

Nistor's response to the holding in *Verdugo-Urquidez* is twofold. First, Nistor suggests that the holding should not be extended to apply to aliens outside of the United States when the property searched resides within the United States. Second, and assuming such an extension of *Verdugo-Urquidez* is permitted, Nistor contends that he has "significant voluntary connections" with the United States to invoke the protections of the Fourth Amendment.

A.  *UNITED STATES V. VERDUGO-URQUIDEZ* AND ITS PROGENY

To his first argument, Nistor claims that the United States and other courts have impermissibly extended the holding in *Verdugo-Urquidez*. [DE 537 at Page ID # 3986-7]. Nistor's reference to other courts, while subtle and without any real support or analysis, is telling. Although the Sixth Circuit has not addressed such an extension, the courts that have addressed it are in agreement that the holding in *Verdugo-Urquidez* can be extended to electronic searches or surveillance involving nonresident aliens even when the property is here in the United States. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 261 (1990); *See United States v. Hasbajrami*, 945 F.3d 641, 663 (2d Cir. 2019) ("*Verdugo-Urquidez* and *In re Terrorist Bombings* make it dear that the Fourth Amendment does not require the government to obtain a warrant before collecting the [domestically located] e-mails of foreign individuals abroad."); *United States v. Mohammad*, 339 F.Supp.3d 724, 749 (N.D. Ohio 2018) (holding that Fourth Amendment protections are not available to a nonresident alien simply because the searched electronic data was stored on servers located in the United States).

Nistor counters that the Court should look to *Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018) (certiorari granted) for guidance. The problem for Nistor, which he all but admits, is that this argument has been previously advanced and rejected. In *United States v.*

4

*Alahmedalabdaloklah* in response to post-trial motion practice, the Court flatly rejected this argument.

> In *Rodriguez*, . . . [t]he mother of the Mexican citizen sued the Border Patrol agent in federal court, asserting a *Bivens* claim under the Fourth Amendment. . . . The Ninth Circuit made clear, however, that the case was "not about searches and seizures broadly speaking." *Id*.
>
> Despite the language in *Rodriguez* attempting to limiting it to the peculiar context of the use of deadly force, Defendant argues the reasoning of *Rodriguez* establishes he had viable Fourth Amendment rights that were infringed through the SCA order and warrant. Regardless of the impact *Rodriguez* might have on other Fourth Amendment cases, it has no application here because the Ninth Circuit has already concluded that seizing the e-mail communications of an individual such as Defendant does not implicate the Fourth Amendment.
>
> . . .
>
> In *United States v. Mohamud*, 843 F.3d 420 (9th Cir. 2016), . . . [t]he Ninth Circuit concluded the foreign national did not have "sufficient voluntary connection[s] to the United States for the Fourth Amendment to apply." *Id*. at 439 n.22. Thus, the foreign national was a "non-U.S. person with no Fourth Amendment right." *Id*. at 439. And while the foreign national's e-mails were collected from computers located in the United States, the applicability of the Fourth Amendment was dictated by "the location of the *target*, and not where the government literally obtained the electronic data." *Id*.

2018 WL 5807091, at *9 (D. Ariz., Nov. 6, 2018) (emphasis in original).

Similarly, in *United States v. Mohamud*, the defendant, a United States' citizen, sought to suppress evidence of a nonresident alien's emails that were searched without a warrant. He argued that although the target was a nonresident alien, the emails were located on a server in the United States, which required a warrant to search. The Ninth Circuit dismissed this argument, because "what matters here is the location of the target, and not where the government literally obtained the electronic data." *United States v. Mohamud*, 843 F.3d 420, 439 (9th Cir. 2016) (quotation marks and citations omitted; emphasis in original).[1]

---

[1] The search in *Mohamud* was incidental to a statutory search under the Foreign Intelligence Surveillance Act; however, the Court decided this particular issue on Fourth Amendment grounds,

5

Nistor suggests the Court ignore the holdings of *Mohamud* and *Alahmedalabdaloklah*, two cases with nearly identical facts to the case at bar, in favor of *Rodriquez*, which was a *Bivens* civil action currently under Supreme Court review. The Court will not take such an indefensible position. Rather, based upon the rationale set forth by the Supreme Court in *Verdugo-Urquidez* and its progeny, the Court believes that the Fourth Amendment does not apply to searches of alien residents regardless of the location of the property.[2]

**B.  SIGNIFICANT VOLUNTARY CONNECTION**

The parties spend the majority of their briefs litigating whether Nistor has "significant voluntary connections" with the United States such that the Fourth Amendment should apply to him. The dispute is founded upon the holding in *United States v. Alahmedalabdaloklah*, a case that mirrors the facts in the present case.

There, the defendant was a Syrian national charged with committing crimes while he resided outside the United States. 2017 WL 2839645, *1 (D. Ariz. July 3, 2017). He did not enter the United States until he was extradited here for prosecution. *Id*. Alahmedalabdaloklah moved

---

holding that the place of the target is the most important inquiry in cases with electronic information.

[2] Courts have refused to apply Fourth Amendment protections in a variety of circumstances that are not at issue here but support the Court's conclusion that suppression is not available to Nistor. *See, e.g.*, *United States v. Emmanuel*, 565 F.3d 1324, 1331 (11th Cir. 2009)(Denying a motion to suppress a Bahamian wiretap because "the Fourth Amendment does not apply to nonresident aliens whose property is searched in a foreign country[.]"); *United States v. Kurdyukov*, 2002 WL 31016494, at *3 (5th Cir. Aug. 15, 2002)("Kurdyukov is a Ukrainian national and the search of the China Breeze occurred in international waters. Therefore, Kurdyukov cannot receive the protections of the Fourth Amendment."); *United States v. Barona*, 56 F.3d 1087, 1094 (9th Cir. 1995) (Resident alien of the United States was not entitled to Fourth Amendment protections when outside of the United States territory); and *United States v. Hasbajrami*, 2016 WL 1029500, at *7 (E.D.N.Y. March 8, 2016) ("Accordingly, under *Verdugo-Urquidez*, the Fourth Amendment does not constrain the government from collecting the communications of non-U.S. individuals[.]"

the Court to suppress evidence obtained from search warrants for his email accounts—electronic information that was stored on servers in the United States. That Court held:

> Here, it is undisputed that Defendant is a nonresident alien who had no previous significant voluntary connection with the United States. When the § 2703(d) Orders and Warrants were obtained and implemented, Defendant was located and resided outside of the United States. When the electronic communications were allegedly made by Defendant, he was located and resided outside of the United States. No physical property located in the United States was seized. The storage of the content of electronic communications on servers located in the United States—without more—cannot justify extending Fourth Amendment protection to a person who does not have substantial connections to the United States.

*Id*. at *3.

Neither party disputes that the situation described in *Alahmedalabdaloklah* is identical to the one before the Court. Nistor, however, selectively quotes *Alahmedalabdaloklah* to argue that its holding only applies if the alien lacks "any 'previous significant voluntary connection with the United States.'" [DE 537 at Page ID # 3985, quoting *Alahmedalabdaloklah* at *2)]. Nistor then highlights arguments made by the United States in response to Nistor's Motion to Dismiss the Indictment in which the United States pressed, relevant to the Fifth Amendment, that Nistor "associated with U.S. financial transactions at least during 2015-2017, and possible since 2011". [DE 537 at Page ID # 3985]. Based upon the selected quote from *Alahmedalabdaloklah* and the prior statements of the United States, Nistor argues the United States cannot now claim Nistor has no contacts with the United States.

Nistor, however, has the same problem as the United States. During that same motion practice Nistor vehemently claimed that he "is not now, and has never been, a citizen of the United States of America. Prior to his extradition to the United States, . . . Nistor had only previously been in the United States to attend high school during the 2003-2004 school year. . . . [He] was the operator of bitcoin exchange company based in Romania[.] . . . Nistor registered Coinflux with the Romanian government and conducted all the transactions that are the subject of the allegations in

7

the Indictment against Nistor entirely within Romania involving Romanian citizens." [DE 459-1 at Page ID # 3104-5]. Nistor maintained in his Motion to Dismiss the Indictment that he had no connections to the United States, and under the Fifth Amendment, this matter "fails to set forth facts that satisfy the legal requirements of . . . jurisdiction in the United States." [DE 459-1 at Page ID # 3104].

Despite all of this, Nistor now claims he is a "non-U.S. defendant [who] has had a continuing connection with the United States, and that connection has not consisted of per se unlawful activities[.]" [DE 537 at Page ID # 3988]. Nistor cites to Count 1s of the Superseding Indictment to support his argument that he has had voluntary connections with the United States.

The United States distinguished its prior position that Nistor's activities in the United States were sufficient to confer jurisdiction for prosecution under the Fifth Amendment, but are not enough of a significant voluntary connection to the United States to receive Fourth Amendment protections:

> The principles addressed in this response concern the Defendant's Fourth Amendment rights; these arguments have no bearing on the analysis undertaken in another response to be filed by the Government concerning whether this Court can exercise jurisdiction over the offenses charged against Nistor under the Fifth Amendment.

[DE 519 at Page ID # 3837 n. 2].

The Court agrees with the United States' position. The analyses for the application of the Fourth and Fifth Amendments are separate and distinct. The Supreme Court was clear in *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) that the Fourth Amendment "operates in a different manner than the Fifth Amendment." Judge Wier already found that while Nistor's general involvement in the conspiracy "implicates domestic security interests, [and] Nistor's alleged participation in that scheme (if proven) would establish a sufficient nexus to the United States" and not fundamentally unfair, such that he could be prosecuted here pursuant to the Fifth

Amendment. [DE 574 at Page ID # 4148]. The United States has never argued, and the Court has not found, that Nistor "has had a continuing connection with the United States" as Nistor states in his Reply brief. Pointing to one financial transaction with a United States financial institution that the prosecution alleges is criminal, and a grand jury indicted him for, is not a particularly compelling argument that he had significant voluntary connections with this country sufficient to afford him the protections of the Fourth Amendment. *Alahmedalabdaloklah*, at *3.

Such a distinction is best emphasized by the holding in *United States v. Mohammad* where a non-resident alien defendant with far more connections to the United States was unable to avail himself of the Fourth Amendment's protections. 339 F.Supp.3d 724 (N.D. Ohio 2018). In that case, the defendants sought to suppress electronic surveillance evidence obtained without a search warrant. *Id*. at 730. The target of the surveillance was a citizen of India who resided his entire life in the United Arab Emirates until he came to the United States to attend college. *Id*. at 748. He attended school in the United States for five years and then returned to the United Arab Emirates where he remained for the rest of his life until extradition to the United States. *Id*. He visited the United States twice during that time, including once to marry a United States citizen. *Id*. He was in the United States less than a month during both visits, and both visits were years prior to the surveillance in the case. *Id*. at 749. The Court found even a half-decade long residency in the United States and a United States citizen spouse did not "amount to a substantial voluntary connection" for Fourth Amendment protections under these circumstances. *Id*. Here, Nistor's connections to the United States, such that they exist and are not wholly criminal in nature, are minuscule in comparison to the defendant in *Mohammad*.

Because the Court finds that Nistor was a nonresident alien without significant voluntary connections to the United States, the Court concludes he cannot avail himself of the protections of

9

the Fourth Amendment, including the remedy of suppression. The Court finds it wholly unnecessary to conduct further analysis, as any alternative analyses would suppose that the Fourth Amendment applies to the search warrants at issue in Nistor's motion—a supposition the Court finds is in direct contradiction to the available case law.

### III. CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 460]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Crim. P. 59(b), and local rule, within **ten** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. The Court finds this abbreviated objection period is necessary due to the rapidly-approaching trial date.

Entered this 17th day of April, 2020.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge